**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————————

**GENESIS RODRIGUEZ,**

                    **Plaintiff,**

     **- against -**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

——————————————————————————

**19-cv-10002 (JGK)**

**MEMORANDUM OPINION**
**AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiff, Genesis Rodriguez, brought this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (the "Act"), seeking judicial review of a decision of the Commissioner of Social Security ("Commissioner") regarding her claim for Supplemental Security Income ("SSI"). The Commissioner's decision became final when the Appeals Council denied the plaintiff's request for review of the February 7, 2018 decision of the Administrative Law Judge ("ALJ").

The parties cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and the Court referred the motions to Magistrate Judge Ona T. Wang for a Report and Recommendation ("R&R"). Magistrate Judge Wang recommended that the Commissioner's motion be granted and that the plaintiff's motion be denied. The plaintiff filed timely objections to the R&R and the Secretary filed a response.

The facts of the case and the procedural background are set forth in the thorough R&R, and familiarity with those facts is assumed. For the reasons explained below, the Court **adopts** the R&R, the Commissioner's motion for judgment on the pleadings is **granted**, and the plaintiff's motion for judgment on the pleadings is **denied**.

## I.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a Magistrate Judge's report and recommendation to which an objection is made is subject to de novo review.  The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C).

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam).[1] Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). As the Supreme Court recently affirmed, "the threshold for such evidentiary sufficiency is not high," because substantial evidence "means—and means only—such relevant evidence as a reasonable mind might

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, (2019); see also, Brault v. Comm'r of Soc. Sec., 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) ("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Courts are instructed to "defer to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not this court, to weigh the conflicting evidence in the record.").

## II.

Under the Act, a claimant must show that the claimant is "disabled" in order to qualify for SSI benefits. 42 U.S.C. §§ 1382c(a)(3)(A); 1382(a). The Commissioner's regulations provide a five-step inquiry to determine if a claimant is disabled. See 20 C.F.R. § 416.920(a).[2] Pursuant to this process, the Commissioner must consider:

---

[2] The statutory definition of "disability" for purposes of SSI under Title XVI is virtually identical to that used for disability insurance benefits ("DIB") under Title II. Barnhart v. Walton, 535 U.S. 212, 214 (2002); compare 42 U.S.C. § 1382c(a)(3) with 42 U.S.C. § 423(d). The determination of disability for DIB under Title II, and judicial review of such a determination, is also similar to the determination of disability for purposes of SSI benefits under Title XVI of the Act. Avila v. Astrue, 933 F. Supp. 2d 640, 649 n.5 (S.D.N.Y. 2013). Thus, cases regarding the definition of "disability" under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3). See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980); Lopez v. Comm'r of

> (1) whether the claimant is currently engaged in
> substantial gainful activity; (2) whether the claimant has
> a severe impairment or combination of impairments; (3)
> whether the impairment meets or equals the severity of the
> specified impairments in [Appendix 1][3]; (4) based on a
> "residual functional capacity" assessment, whether the
> claimant can perform any of his or her past relevant work
> despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that
> the claimant can perform given the claimant's residual
> functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014); 20 C.F.R.

§ 416.960(c)(2). The claimant bears the burden of proof through

the first four steps; the burden shifts to the Commissioner at

the fifth step. See Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.

2000). However, the burden shift at step five, "is only a

limited burden shift, in that the Commissioner need only show

that there is work in the national economy that the claimant can

do." Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).

### III.

In her objections, the plaintiff argues that the Magistrate

Judge: (1) incorrectly found that the ALJ properly determined

the plaintiff's Residual Functional Capacity (RFC); (2)

incorrectly found the ALJ's RFC finding for "simple, routine

tasks" was proper because the plaintiff had only moderate

---

Soc. Sec., No. 18-CV-7564, 2020 WL 364172, at *1 n.1 (S.D.N.Y. Jan. 22,
2020).
[3] Step three considers whether the claimant has an impairment or combination
of impairments that meets or medically equals the severity of one of the
listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20
C.F.R. §§ 416.920(d), 416.925, 416.926.

limitations in concentrating, persisting, or maintaining pace, thus failing to apply the proper legal standard to determine whether moderate limitations in concentration persistence or pace are compatible with unskilled work; (3) failed to address the ALJ's failure to consider the plaintiff's limitations on regular attendance, being punctual, absenteeism, and being off-task in light of the vocational expert's ("VE") testimony, and erred in finding the ALJ properly relied on the VE's testimony; and (4) incorrectly found the ALJ did not fail to understand the nature of Oppositional Defiant Disorder ("ODD").

**A**

The plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly determined the plaintiff's RFC. The ALJ determined that the plaintiff had the RFC to perform a full range of work at all exertional levels, but with various restrictions including that the plaintiff is limited to work involving simple, routine tasks, in a low stress job, with occasional judgment on the job, but no fast-paced work requirements, and no interaction with the public and only occasional interaction with co-workers, and only occasional supervision. R. at 447-48.[4] The plaintiff objects to the

---

[4] Certified Administrative Record, ECF No. 10.

different weights the ALJ assigned to the different medical opinions in the record in arriving at the plaintiff's RFC.

For claims filed before March 27, 2017, the regulations in 20 C.F.R. § 416.927(c) govern consideration of "medical opinions," which are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(a)(1). The relevant considerations include the examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 416.927(c).

In this case, the ALJ relied on the medical history and treatment notes from the plaintiff's providers gathered between 2011 and 2016, the consultative examination opinions of Dr. Apacible, Dr. Mahony, and Dr. Thomas, the plaintiff's testimony, and the testimony of her mother. The ALJ found that there was nothing in the medical evidence that showed that the plaintiff is precluded from performing mental or physical-related activities. R. at 452. Supporting the RFC determination, Dr. Apacible opined that the plaintiff was able to perform simple work in a low contact setting; Dr. Mahony opined that the plaintiff could perform simple tasks, maintain attention and concentration, and work within a regular schedule, and that the plaintiff's psychiatric problems would not significantly interfere with her ability to function on a daily basis; and Dr.

Thomas opined, in part, that the plaintiff had moderate
limitations of maintaining attention and concentration,
maintaining a regular schedule and making appropriate decisions.
R. at 452-53. After a detailed review of the medical history and
treatment notes, R. at 449-51, the ALJ's opinion thoroughly
explained why he assigned a particular weight to different parts
of the consultative examination opinions of Dr. Apacible, Dr.
Mahony, and Dr. Thomas based on the characteristics of each
opinion consistent with Section 416.927(c) and the ALJ's review
of the whole record, including the treatment notes, R. at 452-
54.[5]

The plaintiff specifically objects to the ALJ's assigning
little weight to Dr. Thomas's opinion that the plaintiff's
psychiatric problems may significantly affect her ability to

---

[5] Because none of the consultative examiner opinions in the record were
provided by physicians who treated the plaintiff, the treating physician rule
does not apply to any of their opinions. See Shaw v. Chater, 221 F.3d 126,
134 (2d Cir. 2000) ("[The treating physician] rule mandates that the medical
opinion of a claimant's treating physician is given controlling weight if it
is well supported by medical findings and not inconsistent with other
substantial record evidence."). As to the treatment notes in the record, it
is unclear under Second Circuit law whether treatment notes are considered
"opinions" and thus entitled to controlling weight under the treating
physician rule. See, e.g., Wider v. Colvin, 245 F. Supp. 3d 381, 390
(E.D.N.Y. 2017) ("The Second Circuit has not given explicit guidance on the
precise difference between treatment notes and medical opinions. However, it
is clear from the case law that they are two separate categories because the
Second Circuit has often held that ALJs can disagree with doctors' medical
opinions when they differ from treatment notes.") In any event, a review of
the ALJ's decision shows that they were de facto treated as controlling: The
ALJ's RFC analysis begins with a thorough review of the hospitalization and
treatment notes from 2011 to 2016. R. at 448-452. Then, in explaining the
weights of the opinions of Dr. Apacible, Dr. Mahony, and Dr. Thomas, the ALJ
references the treatment records, giving greater weight to those opinions
that are consistent to the rest of the record, including the treatment notes.

function. The plaintiff accuses the ALJ of faulty reasoning for rejecting Dr. Thomas's opinion because the ALJ found that the plaintiff's treatment records described her as "being at baseline, being stable, and having minimal to no depressive symptoms." R. at 453. In response, the plaintiff states that "being stable at baseline" is in no way "normative behavior for a mentally healthy person." However, when read in context, it is clear that the ALJ did not conclude that being "stable" and "at baseline" was equivalent to being healthy. Instead, the ALJ concluded that the treatment records showed that the plaintiff's conditions were successfully managed for years such that her "problems do not significantly interfere with her daily functioning, unless she lets them flare-up via medication and treatment noncompliance" R. at 453. Therefore, the ALJ appropriately accorded little weight to this portion of Dr. Thomas's opinion. And pursuant to 20 C.F.R. § 416.927(c)(4), the ALJ was entitled to assign a medical opinion, which she concluded was inconsistent with the record as a whole, less weight. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he less consistent that opinion is with the record as a whole, the less weight it will be given.").

The plaintiff also argues that the ALJ erred by giving less weight to the more restrictive portions of Dr. Thomas' opinion even though this opinion was more recent than the other two

opinions. However, nothing in the regulations dictates that a more recent opinion is necessarily entitled to greater weight. Instead, the ALJ appropriately relied on those parts of all opinions that were consistent with the remainder of the record.

Because the ALJ based his determination of the plaintiff's RFC on a thorough review of all the evidence in the record and provided a detailed explanation for assigning different weights to different medical opinions consistent with the regulations, the ALJ properly determined the plaintiff's RFC.

**B**

The plaintiff argues that the Magistrate Judge erred in finding that the ALJ correctly determined that the plaintiff had the RFC to perform "simple, routine tasks," and that the plaintiff had only moderate limitations in concentrating, persisting, or maintaining pace.

The R&R states that the ALJ's finding was "consistent with the Second Circuit's position that moderate limitations do not exclude unskilled work." R&R at 32 (emphasis added). In other words, the Second Circuit Court of Appeals has previously found that claimants with moderate limitations were not precluded from performing unskilled work. See, e.g., Matta v. Astrue, 508 Fed. App'x 53, 55 (2d Cir. 2013); Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010). The Magistrate Judge did not conclude that the ALJ's finding was proper solely because the plaintiff had only

moderate limitations. Rather than merely basing his decision on the fact that the plaintiff's limitations were rated "moderate," the ALJ's opinion is clear that the finding for "simple, routine tasks" was made based on a thorough review of the plaintiff's medical records, the plaintiff's testimony, the plaintiff's mother's testimony, and the opinions of Dr. Apacible, Dr. Mahony, and Dr. Thomas on the plaintiff's limitations. R&R at 32-33; R. at 448-54. Indeed, the ALJ expressly considered the plaintiff's limitations in the areas of concentrating and observed that while the record reveals difficulties in this area, it does not show any significant attention or concentration issues that would preclude the plaintiff from performing simple, routine work. R. at 451. Accordingly, the ALJ did not err and did not apply an incorrect legal standard.

The plaintiff also argues that the evidence in the record does not support a finding that the plaintiff could sustain simple, routine tasks in light of her difficulties with attention or concentration. However, the record reflects that the plaintiff recently completed her General Equivalency Diploma ("GED"), R. at 452, 485, and assists with the care for her child by playing with her, R. at 225, 425, both tasks that require sustained attention and effort. Furthermore, the treatment notes from the relevant period (that is, after 2013, when the plaintiff became an adult) reflect that the plaintiff related

that she was doing "well" or "ok," and that she was able to focus, R. at 1299, 1319, 1402, 1448, or described her difficulty concentrating as moderate and mild, R. at 1448, 1599. Accordingly, there was sufficient evidence in the record to show that the plaintiff's moderate limitations in concentrating, persisting, or maintaining pace do not preclude her from simple, routing tasks. Biestek, 139 S. Ct. at 1154.

### C

The plaintiff next argues that the Magistrate Judge did not address the ALJ's failure to consider the plaintiff's limitations on regular attendance, punctuality, absenteeism, and being off-task in light of the VE's testimony, and erred in finding the ALJ properly relied on the VE's testimony. Although the R&R did not address the effect of these limitations on the VE's testimony, the plaintiff is incorrect in arguing that the ALJ did not consider these limitations and improperly relied on the VE's testimony.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "[A]n ALJ's hypothetical should explicitly incorporate any

limitations in concentration, persistence, and pace . . . .
[H]owever, . . . an ALJ's failure to incorporate non-exertional
limitations in a hypothetical (that is otherwise supported by
evidence in the record) is harmless error if (1) medical
evidence demonstrates that a claimant can engage in simple,
routine tasks or unskilled work despite limitations in
concentration, persistence, and pace, and the challenged
hypothetical is limited to include only unskilled work; or (2)
the hypothetical otherwise implicitly account[ed] for a
claimant's limitations in concentration, persistence, and pace."
Id. at 152.

        In this case, in Step Five of his disability analysis, the
ALJ relied on the testimony of a VE that was based on a
hypothetical formulated by the ALJ and which included the
following limitations: no concentrated exposure to extreme cold,
extreme heat, wetness or humidity, irritants such as fumes,
odors, dust and gasses, poorly ventilated areas, exposure to
chemicals; work limited to simple, routine tasks; work in a low
stress job, defined as having only occasional decision making
and only occasional changes in the work setting; work with only
occasional judgment required on the job; no fast-paced work
requirements; no interaction with the public and only occasional
interaction with co-workers; only occasional supervision. R. at
493-94. Based on these limitations, the VE testified that there

would be jobs like laundry laborer and housekeeping cleaner that
the plaintiff could do, and which exist in great numbers in the
national economy. R. at 494.

The limitations included in the hypothetical did not
explicitly or implicitly incorporate the limitations on
punctuality and absenteeism identified by some of the doctors
who examined the plaintiff. However, the ALJ did include the
limitation that the plaintiff was limited to "simple, routine
tasks" and there was substantial evidence to support the
conclusion that the plaintiff could perform that work despite
any limitation on punctuality or absenteeism. The medical
evidence on this limitation was mixed. On the one hand, Dr.
Apacible opined that the plaintiff was "moderately limited" with
respect to her "ability to perform activities within a schedule,
maintain regular attendance, and be punctual within customary
tolerance," R. at 385, and Dr. Thomas indicated that the
plaintiff was "moderately limited" in her ability to maintain a
regular schedule, R. at 761. On the other hand, Dr. Mahony's
consultative examination concluded that the plaintiff can
maintain a regular schedule. R. at 369. And in analyzing the
record, the ALJ observed that the plaintiff was attending
regular education classes on a sustained basis, thus indicating
that she can handle a regular schedule. R. at 453. The ALJ
concluded, as he was entitled to do based on the evidence, that

13

the plaintiff was able to perform simple, routine tasks despite alleged limitations, and therefore a further limitation in the hypothetical was unnecessary. <u>See</u> <u>McIntyre</u>, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); <u>see also</u> <u>Freund v. Berryhill</u>, No. 17-CV-9967, 2019 WL 1323992, at *12 (S.D.N.Y. Mar. 25, 2019) (concluding that ALJ did not err in not including absenteeism in the RFC where substantial evidence in the record supported the conclusion that the claimant was capable of appearing for work on a regular basis).

Therefore, the ALJ properly relied on the testimony of the VE at Step Five of the disability analysis.

**D**

Finally, the plaintiff argues that the Magistrate Judge erred in finding the ALJ did not fail to understand the nature of ODD. The plaintiff points to the statement by the ALJ that the plaintiff's "problems do not significantly interfere with her daily functioning unless she lets them flare-up via medication and treatment non-compliance." R. at 453. The plaintiff argues that lack of compliance with medication and treatment are symptoms of ODD and that the ALJ's failure to understand this issue had a material bearing on his decision.

In the R&R, the Magistrate Judge correctly concluded that this argument essentially rehashes arguments that the ALJ erred

in finding the plaintiff not disabled. Moreover, a review of the record reveals that noncompliance with treatment or medication was in fact never attributed by the treating doctors to the plaintiff's oppositional behavior. Instead, the record shows that the plaintiff was noncompliant once because she ran out of medication and there was an issue with electronic processing, R. at 1409, and twice for unspecified reasons, R. 1345, 1426. Other than these three occasions, the treatment notes repeatedly report medication compliance. R. at 1313, 1319, 1329, 1335, 1352, 1363, 1379, 1386, 1401, 1448, 1459, 1470, 1488, 1508, 1524, 1541, 1547, 1555, 1567, 1574, 1581, 1589, 1599, 1640. As a result, because there was minimal medication noncompliance, the record does not support the plaintiff's contention that her condition results in noncompliance. Accordingly, the ALJ's understanding of the relationship between ODD, medication compliance, and the plaintiff's health status could not have had any impact on his determination and is not grounds for a remand.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the Magistrate Judge's thorough Report and Recommendation is **adopted** in its entirety, the Commissioner's motion for

judgment on the pleadings is **granted**, and the plaintiff's motion is **denied.**

The Clerk is directed to enter Judgment accordingly. The Clerk is also directed to close all pending motions and to close the case.

**SO ORDERED.**

**Dated:      New York, New York**
**            April 9, 2021**

_____/s/ John G. Koeltl_____

**John G. Koeltl**
**United States District Judge**
